## 75135. HANVEY v. THE STATE.
(368 SE2d 357)

McMURRAY, Presiding Judge.

Defendant was indicted and convicted of the offenses of rape, aggravated assault (with intent to murder) and a terroristic threat. Defendant's appeal raises 18 enumerations of error. *Held*:

1. In enumeration of error 17 defendant contends there was a merger of the offenses. Enumerations of error 15, 16 and 18 raise the sufficiency of the evidence to authorize the conviction as to each offense. The State's evidence shows that: The victim, who was 76 years of age at the time of the trial, had known the defendant for approximately a year prior to the date of the offenses. The defendant lived across the street from the victim with his parents. On the night of the offenses, it was late and the victim was asleep when defendant came to the window of the victim's bedroom. The defendant identified himself and asked the victim to open the door so that he could call an ambulance for his sick mother. The victim went to the door and let the defendant into her home. After entering the house, the defendant dragged the victim into the bedroom, threw the victim on the bed, pulled the victim's pajama pants down, and placed his penis into the victim's vagina. While having intercourse with the victim, defendant placed a bed pillow over the victim's face and told the victim he would smother her if she did not quit "screaming and hollering." The victim testified that after defendant placed the bed pillow over her face she could hardly breathe. After defendant finished he got up off the bed and told the victim that if she called the police he would kill her and burn her house.

The victim's testimony provided the only evidence as to defendant's commission of the offense of a terroristic threat. OCGA § 16-11-37 (a) provides that no person shall be convicted under that subsection "on the uncorroborated testimony of the party to whom the threat is communicated." As the victim's testimony is uncorroborated defendant's conviction for the offense of a terroristic threat was not authorized and the trial court erred in denying defendant's motion for directed verdict of acquittal as to the offense of a terroristic threat.

As to the offense of aggravated assault (with intent to murder), defendant's threat to smother the victim accompanied by his placing the pillow over her face so that she had difficulty breathing are sufficient to authorize this conviction. *Zilinmon v. State*, 234 Ga. 535, 539 (8) (216 SE2d 830); *King v. State*, 178 Ga. App. 343, 344 (1) (343 SE2d 401). In reaching this conclusion we reject defendant's contention that the State was required to prove that the pillow was a deadly weapon. Such proof was not necessary in proving aggravated assault (with intent to murder). *Paschal v. State*, 125 Ga. 279, 280 (54 SE 172). Moreover, the indictment did not allege that the aggravated as-

sault was made with "a weapon likely to produce death."

In regard to the offense of rape, defendant contends that as the victim did not see the defendant place his penis in her vagina there is no direct evidence presented as to the element of carnal knowledge of the victim. However, there is no requirement that the victim's testimony in this regard be predicated on the victim's sense of vision. The victim may also give testimony predicated upon information gathered by other senses. In the case sub judice, the victim testified that she felt defendant's penis in her vagina. Defendant's contention is without merit. Also, contrary to defendant's contention there is no longer any requirement of corroboration of the victim's testimony in a rape case. *Baker v. State*, 245 Ga. 657 (266 SE2d 477).

Furthermore, our review of the transcript reveals ample evidence from which any rational trier of fact could conclude beyond a reasonable doubt that defendant was guilty of the offenses of aggravated assault (with intent to murder) and rape. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Additionally, under the facts and circumstances of the case sub judice there was no merger of the offenses of aggravated assault and rape. OCGA § 16-1-7 (a); *Pryor v. State*, 238 Ga. 698, 700 (234 SE2d 918); *State v. Estevez*, 232 Ga. 316, 319, 320 (206 SE2d 475).

2. Defendant's first enumeration of error contends that the trial court erred in overruling his motion to suppress. This contention arises from a search of defendant's residence. The search warrant identified the items to be seized as, "[m]ens clothing having human blood or sperm on them . . ." During the search, officers also seized two magazines (Chic and Penthouse) which were introduced into evidence at trial for the limited purpose of showing defendant's bent of mind. See *Tyler v. State*, 176 Ga. App. 96, 100 (2) (335 SE2d 691); *Hill v. State*, 183 Ga. App. 654, 656 (3) (360 SE2d 4). The State's evidence is that the seizure of the magazines is governed by the "plain view" doctrine. See *State v. Lyons*, 167 Ga. App. 747 (307 SE2d 285); *Johnson v. State*, 170 Ga. App. 71 (1) (316 SE2d 160); *Strickland v. State*, 175 Ga. App. 224, 225 (1) (333 SE2d 140). Defendant's evidence is that the magazines were not in plain view, but were the fruit of an illegal extension of the search. The resolution of the contradiction in the evidence rests with the trial court on the hearing of a motion to suppress evidence and must be accepted unless clearly erroneous. *McShan v. State*, 155 Ga. App. 518, 519 (2) (271 SE2d 659); *State v. Watts*, 154 Ga. App. 789, 790 (4) (270 SE2d 52). As the evidence authorized the factual conclusion of the trial court, this enumeration of error is without merit.

3. In his second enumeration of error defendant contends the trial court erred in granting the State's motion in limine. The State's motion, predicated on the rape shield statute, sought to preclude the

defense mentioning or introducing evidence that the victim had syphilis. Defendant's bodily fluids had been seized and tested for syphilis with negative results. Defendant argued that if the victim had syphilis and he did not, such supported his defense of mistaken identity.

At the hearing on the State's motion in limine, the State contended that the initial positive test of the victim for syphilis was false and colloquy centered on whether competent evidence was available on the issue of whether the victim had syphilis. The trial court did not grant the State's motion, but barred the use of incompetent hearsay evidence on the issue. The trial court also prohibited suggestion that the victim was infected until such was established by competent evidence. Defendant made no attempt at trial to introduce evidence as to the victim having syphilis. Under these facts and circumstances we find no error in the trial court's ruling.

4. Defendant called as his witness a microanalyst employed by the state crime laboratory. This expert testified as to the results of his examination of a number of items taken from the victim's house and from defendant's home for the presence of fibers or hairs. This expert had, for comparison, known samples of the head hair and pubic hair of the victim and defendant. The expert testified that he did not find any hairs which could have been defendant's on the items taken from the victim's home, nor did he find any hairs which could have been the victim's on items taken from defendant's house. Defendant enumerates as error the trial court's refusal to permit him to elicit further testimony from the microanalyst as to hairs found on items taken from the victim's home which were neither the victim's nor defendant's. Defendant argues that such evidence is supportive of his mistaken identity defense. However, the hairs were found only on two items, a blanket and an afghan, which the victim testified she had purchased at a yard sale two or three days prior to the date of the crimes at issue, and which uncontradicted evidence shows did not come into contact with the victim's assailant. "Admission of evidence is a matter which rests largely within the sound discretion of the trial court and an appellate court will not interfere with its rulings absent abuse of that discretion. *Alexander v. State*, 239 Ga. 108, 110 (236 SE2d 83). If an item of evidence has a tendency to establish a fact in issue, then it is relevant and admissible. *Patterson v. State*, 233 Ga. 724, 725 (213 SE2d 612). Georgia law favors admission of any relevant evidence no matter how slight its probative value. *Baker v. State*, 246 Ga. 317, 319 (271 SE2d 360)." *Whisnant v. State*, 178 Ga. App. 742, 743 (344 SE2d 536). Under these circumstances the testimony which defendant sought to elicit lacked any probative value, and therefore, was properly excluded. *Alexander v. State*, 7 Ga. App. 88 (66 SE 274); *Butler v. State*, 173 Ga. App. 168 (1) (325 SE2d 835).

5. Defendant's fourth enumeration raises the denial of his motion for mistrial predicated on the trial court repeatedly overruling his objections to the presence in full view of the jury of exhibits not yet in evidence. A second ground of defendant's motion for mistrial is the contention that the trial court displayed anger or animosity toward defense counsel for interposing the objection regarding the evidence.

The exhibits were present in view of the jury to facilitate their identification by a witness. The witness was in a wheelchair and did not use the usual witness chair, necessitating an unusual proximity to the jury. All of the items were identified and admitted into evidence (except one pair of blue jeans which was withdrawn, however, there was nothing inflammatory about this item which had been checked for bloodstains by the State serologist with negative results). Under these circumstances we find no prejudice to defendant. *Early v. State*, 170 Ga. App. 158, 163 (5) (316 SE2d 527); *Ezzard v. State*, 155 Ga. App. 594, 596 (4) (271 SE2d 728); *Leonard v. State*, 146 Ga. App. 439, 442 (3) (246 SE2d 450).

Nor does the record support defendant's contention that the trial court's conduct in its colloquy with defense counsel was in any way improper. The trial court's denial of defendant's motion for mistrial was within its discretion. *Roberts v. State*, 242 Ga. 634, 636 (4) (250 SE2d 482).

6. In his fifth enumeration of error defendant contends that the trial court erred in admitting into evidence State's exhibits 8, 22 and 23, a pair of blue jeans and two magazines, due to a failure to prove a chain of custody for these exhibits. A sheriff's department investigator positively identified the three exhibits as items taken from defendant's home during the search thereof. " 'Unlike fungible items, distinct physical objects which can be identified upon mere observation require no custodial proof for their admission.' *March v. State*, 151 Ga. App. 637, 638 (2) (260 SE2d 761) (1979). Accord *Starks v. State*, 113 Ga. App. 780 (1) (149 SE2d 841) (1966); *Norwood v. State*, 238 Ga. 199 (2) (232 SE2d 70) (1977); *Harper v. State*, 251 Ga. 183, 185 (1) (304 SE2d 693) (1983)." *Weaver v. State*, 176 Ga. App. 639, 640 (1) (337 SE2d 420). See *Thomas v. State*, 171 Ga. App. 306, 308 (6) (319 SE2d 511).

7. The State presented the testimony of an expert witness, a forensic serologist, who tested known samples of defendant's blood and saliva, as well as seminal stains on the sheets from the victim's bed. This expert witness testified that defendant had type O blood and was a secreter ("these people . . . secrete their blood type into body fluids other than blood . . . you would be able to determine their blood type from saliva, seminal secretions and vaginal secretions"). The seminal stains were determined to be from a person of blood type

O or type B. The expert testified that 45 percent of the population has blood type O and 12 percent blood type B, so that with consideration of the 80 percent of the population which would be secreters, this information suggests that 45 percent (80 percent of 57 percent) of the population could have perpetrated the rape of the victim.

Defendant's sixth enumeration of error raises the trial court's refusal to strike this testimony on the grounds that it was confusing and lacking in probative value. However, no matter how slight its probative value, as the evidence tends to establish a fact in issue it was properly admitted. The trial court did not err in denying defendant's motion to strike the testimony of this witness. *Whisnant v. State*, 178 Ga. App. 742, 743 (1), supra.

8. In his seventh enumeration of error defendant contends the trial court erred in not allowing defendant to testify concerning the events of the execution of the State's second search warrant (to seize blood, saliva, head hairs and pubic hairs). As the circumstances surrounding the execution of this search warrant are totally irrelevant to defendant's guilt or innocence, this testimony was properly excluded. *Alexander v. State*, 7 Ga. App. 88, supra; *Holmes v. State*, 170 Ga. App. 92, 93 (2) (316 SE2d 491).

9. Defendant's remaining enumerations of error involve the jury charge. Enumerations of error 8, 9 and 11 complain of the failure to give requested charges, the substances of which were contained in the trial court's charge. "The failure to give requested instructions in the exact language requested, where the charge given substantially covers the same principles, is not grounds for reversal. *Young v. State*, 226 Ga. 553 (3) (176 SE2d 52) (1970); *Fox v. State*, 238 Ga. 387 (2) (233 SE2d 341) (1977)." *Kelly v. State*, 241 Ga. 190, 191 (4) (243 SE2d 857).

Enumerations of error 10 and 13 complain of the failure to give requested charges which are not accurate statements of law. Enumeration 10 involves the charge disapproved in *Friar v. State*, 253 Ga. 87, 89 (4) (316 SE2d 466), while enumeration 13 involves a request requiring corroboration of the testimony of a rape victim, which is no longer the law. *Baker v. State*, 245 Ga. 657, supra.

In enumeration of error 12 defendant "contends the trial court erred by failing to charge the jury that where two equal theories present themselves, the jury is obligated to accept that theory which is consistent with the defendant's innocence. This requested charge is applicable only in cases dependent solely on circumstantial evidence. *Griffis v. State*, 163 Ga. App. 491, 492 (2) (295 SE2d 197) (1982)." *Johnson v. State*, 171 Ga. App. 91, 92 (2b) (318 SE2d 799). As the evidence in the case sub judice included direct evidence, particularly the testimony of the victim, the requested charge was not applicable.

In enumeration of error 14 defendant contends the trial court

erred in instructing the jury on falsely sworn testimony. See OCGA § 24-9-85 (b). In *Mauldin v. State*, 167 Ga. App. 789, 791 (5) (307 SE2d 689), we held that "before this section may be charged 'it ·must appear, among other things, that the witness admits, on the trial, that he wilfully and knowingly swore falsely, or the testimony must be such as to render the purpose to falsify manifest.' *Smith v. State*, 74 Ga. App. 777 (2) (41 SE2d 541) (1947); *Hill v. State*, 159 Ga. App. 489 (2) (283 SE2d 703) (1981)." While defendant contends that the evidence adduced at trial did not authorize the charge at issue, this contention is not correct. Defendant's testimony was irreconcilable with the State's evidence, thus, the jury was authorized to conclude that defendant had sworn falsely to a material matter. This enumeration is without merit. See generally *Taylor v. State*, 83 Ga. App. 735 (2) (b), 736 (64 SE2d 598); *Jones v. State*, 70 Ga. App. 431 (3), 438 (28 SE2d 373).

*Judgment affirmed in part and reversed in part. Birdsong, C. J., Carley, Sognier and Benham, JJ., concur. Deen, P. J., Banke, P. J., Pope and Beasley, JJ., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

I concur fully with the majority opinion, except for its reversal of Hanvey's conviction for making terroristic threats. In that regard, I concur with Judge Beasley's partial dissent.

In this case, late one night Hanvey pleaded with the 76-year-old victim to let him into her house so that he could call for an ambulance for his sick mother, who was a friend of the victim. The victim's trusting and helpful response was greeted by Hanvey's vicious assault and rape of the victim, during which he held a pillow over her face so that she could barely breathe. He left her alive but bloody and bruised, after threatening to kill her and burn her house if she ever called the police.

Hanvey's cruel and inhumane attack on this elderly woman who was doing no harm to anyone was substantial. "His conduct toward her was reprehensible, and barely rises above that which is *said* to have prevailed among his remote forebears when they swung by their tails from limb to limb in the far reaches of the jungle enforcing a crude discipline by tooth and claw." *Fekany v. Fekany*, 160 S. 192 (Fla. 1935). (Emphasis supplied.) While a portion of the asserted ancestry assessments in *Fekany* may be allegorical allegations, the bloody, brutal body-batterings of "tooth and claw" in the instant case are literal fact. This evidence authorized a rational trier of fact to find Hanvey guilty beyond a reasonable doubt of all the offenses charged, including making terroristic threats. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

BEALSEY, Judge, concurring in part and dissenting in part.

I concur in all except Division 1 which reverses the conviction for the crime of terroristic threat.

"OCGA § 16-11-37 'does not specify how the testimony must be corroborated. "As in rape cases, the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. [Cit.] Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value. [Cit.] . . ." ' *Boone v. State*, 155 Ga. App. 937, 939 (1) (274 SE2d 49) (1980). See also *Hornsby v. State*, 139 Ga. App. 254, 256 (2) (228 SE2d 152) (1976)." *Ellis v. State*, 176 Ga. App. 384, 386 (3) (336 SE2d 281) (1985).

As noted, the statute does not specify or limit the type or nature of the corroborating evidence required. It need not be the hearing of the threat by another person. In *Ellis*, "the . . . threat against the officer was not actually overheard by anyone else, . . . ." Id. at 387. Yet the court found that the *circumstances* tended to prove the incident occurred.

There the circumstance particularly singled out by the court was the evidence of a similar previous threat. Here the circumstances include the use of the pillow in such a way as to be able to execute the threat, as well as the evidence of the resistance and struggle of the victim of the forced intercourse which provided a setting and gave rise to the threat. As quoted and applied in *Ellis*, the threat was included in " 'a system of mutually dependent crimes.' [Cits.]" *Harper v. State*, 249 Ga. 519, 531 (8) (292 SE2d 389) (1982). That is, the other crimes tended to prove that the terroristic threat was made. See *Harper*. The idea is that the evidence of the other crimes tends to corroborate the testimony that a terroristic threat was made, for it provides the environment and atmosphere for such a threat. Thus it gives the protection against contrived accusations of terroristic threat which the legislature sought to guard against by requiring some corroboration other than the accuser's mere say-so.

In *Hornsby*, one of the corroborating facts was that defendant possessed a pistol when he confronted the victim. Although another person testified that he heard the threat, this does not diminish the corroborative effect and value of the pistol possession.

In *Burnett v. State*, 236 Ga. 597, 598 (1) (225 SE2d 28) (1976), and in *Morgan v. State*, 229 Ga. 532, 533 (1) (192 SE2d 338) (1972), fresh complaints were regarded as corroborative evidence of rape. Here, the victim, who lived alone and was weakened by the experience, complained of the incident the next morning.

Thus we must affirm, for "[i]f there is any corroborating evi-

dence, we will not go behind the jury and pass upon its probative value. [Cits.]" *Burnett*, supra.

I am authorized to state that Presiding Judge Banke and Judge Pope join in this opinion.

DECIDED MARCH 18, 1988 —
REHEARING DENIED APRIL 1, 1988 — 

*Alfred D. Fears, Jr.*, for appellant.

*E. Byron Smith, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.